IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2011

## TRAVIS WARD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-00832     James Lammey, Jr., Judge**

**No. W2010-02270-CCA-R3-PC  - Filed July 29, 2011**

The petitioner, Travis Ward, appeals the post-conviction court's denial of his petition for post-conviction relief, arguing that he received the ineffective assistance of counsel and entered an unknowing and involuntary guilty plea. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Melody M. Oliver, Ellendale, Tennessee, for the appellant, Travis Ward.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; William L. Gibbons, District Attorney General; and Kevin Rardin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

In exchange for a recommended sentence of fifteen years, the petitioner pled guilty to one count of especially aggravated robbery due to his involvement in the robbery of the proprietor of a laundromat. The facts of the case, as recited by the State at the plea hearing, were as follows:

> [O]n October 31st, of 2007, Halloween night, the victim, Mr. Eun Mok, was preparing to shut down his business that he owned and operated, Georgian Hill Coin Laundromat.

Shortly before his closing, an individual who was known to him, . . . a fourteen-year-old juvenile, . . . came in and asked to use the phone. Since Mr. Mok had known [the juvenile] for a period of some two-and-half to three years, he was allowed to do so.

[The juvenile] then left out of the Laundromat, came back in, and, again, asked to use the phone. This time, while [the juvenile] was using the phone, which was located inside a glass enclosure, that required Mr. Mok to go in, open the back door to the glass enclosure and slide the glass windows at the front of the glass enclosure open to allow [the juvenile] to use the phone.

While [the juvenile] was on the phone, two individuals came in wearing masks. One individual shoved a gun through the sliding glass door. The other individual came in the back door of the glass enclosure, demanded the money, was shown by Mr. Mok where the money was. He grabbed the money. He handed some of the rolled change through the window to the man armed with a weapon.

At which time, that man pulled the gun in, used both hands to secure the money in his left ha[n]d. He, then, extended his right arm back through the window, appears to square up on the victim who was last seen holding his hands on top of his head in a completely defenseless position, and pull the trigger.

Mr. Mok was struck by this weapon, and did have a bullet entry to the back of his left calf.

Police officers responded to the scene, and Mr. Mok was taken to the Med. Was learned there was a video surveillance of this entire incident. It was all trapped on tape.

A Mr. Timothy Johnson was seen to go in in between the two times that [the juvenile] went into the Laundromat, and get a drink of water. And he was seen to be standing right outside the Laundromat.

There are eight different cameras on this video surveillance, who were able to see [the juvenile], along with Mr. Macklin, [the petitioner], Mr. Carmichael, and Mr. Johnson, all standing outside talking to each other, waiting on corners, apparently, waiting for the last customer to leave, waiting

while that customer had car trouble, until he actually pulled out, before they went into the building the last time.

Mr. Johnson's face was not covered. His face was put on a media release, and a Crime Stopper[s] tip came in naming him as Timothy Johnson. Mr. Johnson was taken into custody. He did name as his codefendants, [the juvenile], Mr. Carmichael; [the petitioner] and Charles Macklin, who are pleading guilty today.

They were originally charged only with especially aggravated robbery due to the injury Mok suffered. Each of them gave a confession to their part in the robbery, at least to some degree. Mr. Macklin, at that time, indicated that the gun had just gone off accidentally.

After reviewing the video, it is very clear that the gun is brought out of the window, used to secure the money, and then the gun is stuck back through the window, and the shot is fired. And that is the reason why Mr. Macklin, and Mr. Macklin, alone, was indicted with the additional charge of criminal attempt murder first.

. . . .

[The petitioner] is the individual who went in and grabbed the money and handed it through to the gunman, as was later learned from the investigation of his codefendants and his own statement. And Mr. Macklin was the one with the gun.

The petitioner filed a timely petition for post-conviction relief, alleging that his guilty plea was unknowingly and involuntarily entered, that he received the ineffective assistance of counsel, and that his juvenile transfer hearing was illegal.[1] The trial court conducted an evidentiary hearing, at which the petitioner's trial counsel testified that it was his habit to meet with his clients at every court date, and he remembered having at least three jail visits with the petitioner as well. The petitioner was a juvenile at the time of the crime, and counsel communicated with both the petitioner and his mother. Counsel said that it was difficult to see a seventeen-year-old take a fifteen-year sentence, but he reiterated that the crime was recorded on videotape so "there wasn't a whole lot of defense that [he] could come up with for [the petitioner]." Counsel stated that the petitioner understood the

---

[1]No evidence concerning the allegation regarding the transfer hearing was offered at the evidentiary hearing, and the issue was not pursued on appeal.

consequences of his guilty plea "[a]s far as [he] could tell[.]" Counsel said that he discussed with the petitioner that the sentence would be served at 100% and whether it was in the petitioner's best interest to plead guilty. Counsel admitted that he did not speak with any of the witnesses before the impending trial date but explained that he did not do so because "the problem that [the petitioner] had was that he was on videotape as being the one that went behind the counter."

On cross-examination, counsel testified that when he was appointed, he had previously handled at least forty Class A felony cases. In the petitioner's case, counsel filed his standard motions, including a discovery motion, and received discovery from the State. Counsel reviewed the discovery materials with the petitioner and the petitioner's mother. Counsel explained the petitioner's options to him and the range of punishment he faced. After discussing the facts of the case with the petitioner and his mother, "it was decided that it was in his best interest for him to take that guilty plea as he was exposing himself to potential more time at a hundred percent within the system."

The petitioner testified that he was seventeen years old when he was charged in this case and eighteen when he pled guilty. He said that the eighth grade was the last grade he completed. The petitioner claimed that counsel was ineffective in preparing him for the guilty plea in that he did not give the petitioner a "proper understanding of . . . fifteen years at a hundred percent." He thought that his offense was going to be lowered to aggravated robbery and that "it was going to be like a eight-year sentence or something." However, the petitioner admitted that counsel went over all of the guilty plea paperwork with him.

The petitioner stated that counsel met with him two or three times before the guilty plea and talked to him about the fact that there was video surveillance of the robbery. He did not remember counsel ever talking to him about whether it would be in his best interest to plead guilty. Asked whether there was anything else he believed counsel should have done that would have made him understand the guilty plea, the petitioner stated, "Not really."

Asked on cross-examination what the petitioner thought counsel should have done but did not do, the petitioner said, "I think I could have got really it dropped down to a aggravated robbery." However, he acknowledged that he was indicted for especially aggravated robbery and that he was captured on the surveillance video participating in an armed robbery where a person was shot. The petitioner admitted that counsel met with him and discussed the State's evidence against him.

The petitioner acknowledged that he knew he had a right to go to trial but decided to plead guilty because he was concerned that he might be sentenced to more than fifteen

years if he were convicted by a jury. The petitioner admitted that the judge asked him questions when he entered his plea, including whether counsel had explained everything to him and whether he understood the plea, and that he had answered affirmatively. The petitioner further admitted that, at the colloquy, he affirmed to the judge that he understood that his sentence would be served at 100% and that no one had forced or coerced him into pleading guilty.

After the hearing, the post-conviction court issued an oral ruling denying the petition. The court found that the trial judge had "voir dired [the petitioner] extensively" in accepting the plea, informing him that he would face a sentence of fifteen to sixty years if convicted after a trial and that his sentence would be served at 100%. The court observed that "either [the petitioner] was lying today or was lying then but apparently he understood the ramifications of pleading guilty." The court also found that the petitioner's contention that he thought he should have only "gotten aggravated robbery . . . flies in the face of the fact if someone's shot and received serious bod[ily] injury during an aggravated robbery, that becomes especially-aggravated robbery." The court observed that the petitioner was "streetwise" and therefore found that the petitioner's age had no bearing on the knowing and intelligent nature of his guilty plea. The court found that counsel "did a good job" in representing the petitioner and that "not going to trial actually saved [the petitioner] ten more years at a hundred percent."

## ANALYSIS

On appeal, the petitioner argues that he received the ineffective assistance of counsel and entered an unknowing and involuntary guilty plea. Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. Amend. VI; Tenn. Const. art. I, § 9. To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "In cases involving a guilty plea or plea of nolo contendere, the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991)).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553

-6-

S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, in Mackey, our supreme court required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

We conclude that the record fully supports the findings and conclusions of the post-conviction court that the petitioner received effective assistance of counsel and that his guilty plea was knowing, intelligent, and voluntary. The petitioner's testimony that he did not fully understand his guilty plea was discredited by the post-conviction court, which found instead that the petitioner "was fully aware of the ramifications and fully aware of what he was doing when he pled guilty to fifteen years." The post-conviction court also found that the petitioner was "streetwise," thus giving no weight to his youth, and that the petitioner avoided a greater penalty by pleading guilty. The transcript from the guilty plea hearing reveals that the petitioner acknowledged that counsel had reviewed the plea with him, that he understood the plea, and that he had no questions concerning the charge against him. The transcript also shows that the trial court clearly apprised the petitioner of the offense to which he was pleading as well as the sentence he was receiving and that it had to be served at 100%. The petitioner has not met his burden of proving that his guilty plea was unknowingly, unintelligently, or involuntarily entered.

With regard to the effectiveness of counsel, the petitioner affirmed to the trial court at the guilty plea hearing that counsel explained everything to him, that he was satisfied with counsel's representation, and that he knew of nothing that he wanted counsel to do that he did not do. At the evidentiary hearing, counsel testified that he met with the petitioner a

number of times, thoroughly discussed the plea with him, and discussed whether it was in the petitioner's best interest to plead guilty. The post-conviction court found that counsel "did a good job" in representing his client who was recorded on video "obviously involved in an especially-aggravated robbery and . . . knowing full well that he would have been facing really twenty-five years had he been convicted[.]" The petitioner has not met his burden of proving that counsel rendered ineffective assistance.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE